(118 So. 547)

**EAST v. KARTER.**    (6 Div. 584.)

Supreme Court of Alabama.    Oct. 18, 1928.

Rehearing Denied Nov. 22, 1928.

Barney Bland, of Cullman, and J. W. Brassell, of Montgomery, for appellant.

Emil Ahlrichs and F. E. St. John, both of Cullman, for appellee.

BOULDIN, J. The alleged will of J. H. Karter, deceased, was contested upon three grounds: Want of execution, mental incapacity, and undue influence.

Amended plea No. 7, alleging that the paper propounded for probate was not the will of the testator, for that since his death some other person had altered the document by removing a part thereof which described and disposed of property not now shown thereby went to the integrity and genuineness of the paper propounded for probate. This was within the general denial of execution of this paper as the testator's will. Evidence of the attesting witnesses and others touching this matter was received without objection. No injury resulted from eliminating this special plea by demurrer.

Plea No. 3, in its first sentence, presented a good ground of contest. A general averment that the will was procured by the undue influence of a named person or persons, is sufficient.

Further averments of the plea rendered it uncertain, either as an attempt to define undue influence, or as setting up in the same plea mental incapacity or want of a testamentary act in signing the document. It was subject to demurrer.

All the grounds of contest were covered by the pleas submitted to the jury in such form as to cast on contestant no higher burden than required by law. In such case adverse rulings on other pleas were harmless.

Attesting witnesses are competent to give an opinion on the soundness of mind of the testator without other qualification as to acquaintance or association with the decedent. Shirley v. Ezell, 180 Ala. 352, 60 So. 905; 1 Schouler on Wills, § 232.

Attesting witness Imbusch having stated on cross-examination that certain other properties were mentioned in the will at the time it was read and executed, it was proper on rebuttal to ask him if these other properties were not mentioned at the time as having been transferred by other instruments. So, also, it was proper to ask Father Ignatius, the other subscribing witness: "Has there been any part of it taken out?"

All the details going to the form in which the will was drawn and executed were admissible. That it was sealed in an envelope at the time, which was produced and opened after testator's death, was clearly admissible.

The original will is before us. It consists of one full sheet, four pages of legal cap paper, with a half sheet, two pages, inserted between the folds of the full sheet and attached thereto. The full sheet is written on three pages, running consecutively items 1 to 10. It is signed and attested at the bottom of the first page, and again at the bottom of the last page. It is dated July 14, 1924, at the bottom of the first page, and July 16, 1924, at the bottom of the last page.

The inserted sheet merely directs that a named insurance policy be applied to testator's funeral expenses, doctor bills, etc. It is dated July 14, 1924, and is also signed and attested. At each signature the name Anthony J. Karter appears under the word "witness," but in each case this signature is crossed out with ink and the names of Rev. P. Ignatius, O. S. B., and J. G. Imbusch, written thereunder. The pages appear to have been renumbered.

Evidence for proponent tended to show the will was drawn by Anthony J. Karter, a grandson of the testator, at his request and under his dictation; that it was drawn at

two sittings, the testator being old and quite feeble; that Anthony signed his name at the several places on the paper before it was executed by the testator, and at the time of execution Anthony Karter's name was erased, and the names of the two witnesses selected by the testator affixed; that all changes or alterations were made before execution; and that the document was duly subscribed and attested as it now appears.

In the light of explanatory evidence, there is nothing on the face of the paper to justify its rejection because of form, alterations, variance as to dates, or other condition of the instrument.

The assignments of error are numerous. We have carefully considered the entire record. Most of the questions raised are clearly without merit, governed by well-known rules fully and recently discussed in our decisions. On the issue of mental incapacity, the professional and nonexpert testimony is substantially all one way. The testator was near 80 years of age; had recently had pneumonia, and was left in an emaciated, weakened condition, from which he never recovered. He died within some 48 hours after the will was executed. Some assistance was rendered him in sitting up while he signed the will in three places. Still, the evidence, without substantial conflict, is that he was of sound mind when he caused the will to be drawn, and when he executed it. Mental weakness must, to some degree, attend old age and great physical debility. But in the face of testimony as to his mental condition, it was a jury question to find whether he did or did not have mental capacity to know the property, the manner he wished to dispose of it, to know and select the objects of his bounty, to understand the business in which he was engaged. These are the elements of the testamentary act, the making of a will.

The evidence fully justified a finding of confidential relations between the testator and his son, Frank Karter, a favored beneficiary; that character of confidential relations between father and son which would give the son a dominating influence in the procurement of a will. Raney v. Raney, 216 Ala. 30, 112 So. 313. But there is entire want of evidence that Frank Karter, directly or indirectly, induced the making of a will, or suggested its terms. The same evidence which shows his presence in an adjoining room when the will was drawn by his son, that he got the paper on which it was written, also shows he did nothing except at the request of the testator, who called his grandson to do the writing, dictated its provisions, and selected the attesting witnesses. Naturally an element of suspicion attaches to the execution of a will giving a preference to a son having close confidential relations to the aged and feeble parent.

But we need not here do more than repeat the oft-stated rule that the evidence, direct or circumstantial, must go further and afford ground for reasonable inference, not mere suspicion, that the favored beneficiary has been active in the procurement of the will. While some circumstances in evidence may go to the question of undue influence, it can hardly be said that any other verdict than that rendered could be sustained.

In this state of the record, we find no error which would justify a reversal of the judgment probating the will.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.