144 So. 26

## EAST v. KARTER et al.
### 6 Div. 114.

Supreme Court of Alabama.
Oct. 6, 1932.

Rehearing Denied Nov. 10, 1932.

F. E. St. John and Emil Ahlrichs, both of Cullman, for appellees.

## FOSTER, J.

On January 27, 1917, Mary B. Karter owned certain houses and lots, from which an income was derived, and on that day she and her husband, J. H. Karter, executed a mortgage to a building and loan association upon one of them. On July 8, 1917, they signed and acknowledged a deed purporting to convey one of the lots to a daughter, Adeline J. Beyer, and had the deed recorded, and then took it out of the probate office and retained its manual possession. It was never otherwise delivered. J. H. Karter continued to lease the property and collect the rents before and after the death of his wife, and made the monthly payments to the building and loan association. The rents collected were more than sufficient to make such payments. When the last payment was made on January 6, 1923, the mortgage was transferred to him at the instance of Frank Karter, one of the heirs, and now his executor. He continued to collect the rents without let or hindrance until he died July 19, 1924. After his death his executor undertook to foreclose the mortgage, and this suit is by the daughter and husband of Mrs. Beyer as her heirs and distributees, claiming that the money which J. H. Karter paid was derived from rents collected from the property, or that at the time of such payment he had in his possession a sufficient amount of such funds to make it, and that they were funds belonging to Mrs. Beyer, or her heirs, the complainants, and that therefore the mortgage was in fact paid so far as they are concerned and is not subject to foreclosure.

In a former suit between the heirs of Mary B. Karter and J. H. Karter, the validity of the deed was upheld. Karter v. East, 220 Ala. 511, 125 So. 655; East v. Karter, 215 Ala. 375, 110 So. 610; Id., 218 Ala. 366, 118 So. 547; Id., 220 Ala. 511, 125 So. 655.

The suit above mentioned was had after the death of J. H. Karter, but his personal representative was not made a party. It is therefore claimed that inasmuch as the instant suit is against his personal representative, the judgment in the former suit is not here binding and that the questions are still open, to wit: Was the deed in fact delivered to Mrs. Beyer, and is it void for uncertainty?

As a principle of law this court is committed in that case to the want of invalidity of the deed for uncertainty. While that case may not be conclusive in a controversy between the grantee and the representative of the estate of J. H. Karter to the extent that the rights and interests of others than his heirs are affected, we think from the evidence that the prima facie presumption of delivery resulting from the act of the grantors, after signing and acknowledging its execution, in causing it to be recorded in the probate office, is not overcome by other circumstances. Skipper v. Holloway, 191 Ala. 190, 67 So. 991; Napier v. Elliott, 177 Ala. 113, 58 So. 435, 437; Gulf Red Cedar Co. v. Crenshaw, 169 Ala. 606, 613, 53 So. 812, 814.

Mary B. Karter left a will duly probated by which she devised her home to Mrs. Beyer, which she valued at $3,500. The balance of her property was devised to J. H. Karter, but it expressed an intention that all her children share equally in her property, with the further statement that Mrs. Beyer had not received anything and was to have the homestead or its value of $3,500 more than the others.

In this connection we concede that the will of Mary B. Karter indicates that Mrs. Beyer had not received this property. But the will is not dated, and while its legal effect speaks as of the date of her death, as circumstantial evidence, showing a collateral intention of the testatrix, it should be construed as indicating conditions which existed on the date of its execution. We do not know that it was executed after the date of the deed. On the other hand, the conduct of J. H. Karter shows a recognition of ownership by the grantee. He rented it one year evidenced by a lease signed in the name of the grantee by him as her agent. He assessed it for taxes by him as her agent, for several years before he died. He did collect all the rents until his death, but he paid out of them the mortgage debt on the property, for which he never made claim against such grantee in his lifetime.

If the deed was delivered and effective, as we think it was, the grantee was due thereafter to have the possession and rents. But there was a mortgage on it at the time of the conveyance. J. H. Karter made the payments during the six years it existed. He was collecting the rents more than enough to make such payments. The question is: Did he thereby satisfy the mortgage, or was there then a right to have it transferred to him and foreclosed against such grantee or her heirs? Did J. H. Karter pay such debt with his own funds, or use in that manner those of the grantee, of which he was trustee? If he was the trustee of her funds and had in possession an amount sufficient to that end, his payment is chargeable to that fund whether the identical trust fund was so used or not. Heflin v. Heflin, 222 Ala. 662, 134 So. 20. His collection of her money and its payment on the debt had the effect prima facie to discharge an incumbrance on her property. Therefore, did the fact that for six years she permitted him to rent out and collect the rent and pay the taxes in her name, the expenses of its upkeep, and the mortgage debt, indicate a purpose to give him the amount of such rents so that having thus paid off the mortgage on her property he could claim it as a continuing liability against it, virtually against her? If she donated such amounts to him, it was his. But there is no evidence of such donations, only the single circumstance that she made no claim, though he was using her funds for her benefit, and appropriated the remainder to his own use. Ordinarily payments by a parent for a child, in the absence of explanation, are presumed to be a donation to the child. Montgomery v. McNutt, 214 Ala. 692, 108 So. 752; Waddail v. Vassar, 196 Ala. 184, 72 So. 14; Veitch v. Woodward Iron Co., 200 Ala. 358, 76 So. 124; Long v. King, 117 Ala. 423, 23 So. 534.

If there is an inference that she donated to her parents the rent money they collected, there is likewise a presumption that they donated to her that portion of it which they used for her benefit. Though the deed was upon a nominal consideration, that does not seem to us to justify the conclusion that they did not intend thus to donate what they had so used of her funds. The conduct of the grantee shows an acquiescence in what her parents had done in this respect; that is, to use the rent money to pay off the liens and appropriate to their own, use the balance, but not that, having acquiesced in the use of the payment of the mortgage which was a liability on her property, such liability should continue to exist as a claim against it, and not that her purpose was not only to donate the rents but also to keep intact and alive the mortgage for the benefit of such donee.

We cannot permit what may turn out to be an inequality in the distribution of the estate, to prevent the legal consequences of a clearly defined state of circumstances. We must allow legal principles to govern the situation, whatever the result. We think that when we consider the facts in their true legal aspect, they show that the personal representative of J. H. Karter's estate should not proceed to foreclose the mortgage, that it has been paid, that the injunction should be made perpetual, and that the prayer of the bill be granted. Such is the decree of this court.

Reversed and rendered.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.