189 So.2d 141

Tysia Belle TAYLOR

v.

FIRST NATIONAL BANK OF TUSKALOOSA, Tuscaloosa, Ala., Ex'r.

6 Div. 46.

Supreme Court of Alabama.

July 21, 1966.

Jones, McEachin & Ormond and Conrad H. Fulton, Tuscaloosa, for appellant.

E. D. McDuffie and Norma Holcombe, Tuscaloosa, for appellee.

COLEMAN, Justice.

From a decree for complainant in a suit in equity seeking relief in the nature of the enforcement of a resulting trust or subrogation, respondent appeals.

Appellant's brief contains statements of the case and of the facts, including a condensed recital of the evidence given by each witness in narrative form as is required by Rule 9 of the revised rules of this court when the insufficiency of the evidence to sustain the finding is assigned. 261 Ala. XXII; 1958 Recompilation Code 1940, Title 7, Appendix. Appellee has not made any correction or addition to appellant's statements of either the case or the facts as provided for by Rule 10 of the rules of this court. 261 Ala. XXIII; 1958 Recompilation Code 1940, Title 7, Appendix. The statements made by appellant, therefore, will be taken to be accurate and sufficient for decision, as provided by Rule 9, supra.

Complainant, a corporation, is a bank and is the executor of the will of I. N. Schofield, deceased. Respondent is a daughter of the testator. His will is dated October 18, 1952. He died May 22, 1961. The will was admitted to probate a short time after his death.

By the will, testator gave to his wife a life estate in all of his estate, real, personal, and mixed, and the remainder to his children in equal shares. He appointed complainant executor of the will. He was survived by his widow and eight children who were living at the time of the trial.

The court overruled respondent's demurrer to the bill of complaint and this ruling is assigned and argued for error, but we reverse for insufficiency of the evidence to sustain the finding and do not consider the ruling on demurrer.

On July 11, 1958, for a recited consideration of $13,252.00, testator bought a house and lot in a subdivision in Northport. Testator is the grantee named in the deed.

On the same day, testator and wife executed to complainant a mortgage to secure a loan of $13,500.00, payable in monthly installments of $150.00 each. In the mortgage, as security, testator conveyed the Northport property which is described in the above-mentioned deed, and also a tract of land which is referred to in the testimony

as 35 acres and is described in the mortgage as being a part of the Wash Christian farm.

Also on the same day, for a recited consideration of $10.00, love and affection, and respondent's assumption of and agreement to pay the above-mentioned mortgage, testator and wife, by warranty deed, conveyed the Northport property to respondent.

The mortgage and both deeds were all recorded in the office of the Judge of Probate on the same day, July 11, 1958.

Thereafter, it seems, respondent executed a paper whereby she acknowledged that, as part of the consideration for the deed to her, she assumed and agreed to pay the debt secured by the mortgage at the rate of $150.00 per month as is provided in the mortgage. This exhibit is dated July 30, 1958, sworn to July 30, 1958, and filed for record in the office of the Judge of Probate July 25, 1961, which was subsequent to' testator's death.

By warranty deed dated and acknowledged September 10, 1958, testator and wife, for a recited consideration of $12,000.00, conveyed the 35-acre Wash Christian farm tract to Ernest Morgan and Hugh Bridges. Morgan and Bridges have no other connection with this case.

By instrument dated September 23, 1958, complainant released the 35-acre tract from the lien and operation of the mortgage. The recited consideration for the release is the payment of $6,000.00 to complainant by Morgan and Bridges. It seems to be agreed as a fact that the $6,000.00 paid to complainant for the release was part of the $12,000.-00 paid by Morgan and Bridges as the purchase price for the Wash Christian farm land, and, in effect was paid to the complainant by testator. The $6,000.00 payment was the consideration for the release. The intention of testator with regard to respondent's obligation to pay or repay this $6,000.00 to him or to his executor is a contested question in this case.

The trial court found that the $6,000.00 payment was not intended as a gift to re-

spondent and that "it was the intention and judgment of the said I. N. Schofield, Deceased, that she owed him said Six Thousand and No/100 ($6,000.00) Dollars . .." The court decreed that respondent pay $6,-000.00 to complainant at the rate of $150.00 per month and fastened a lien on the Northport property to secure payment. Respondent appealed.

Respondent testified that she was divorced from her husband by decree granted May 22, 1961, the date her father died. She had three children. Her father arranged for her to get her home by means of the instruments introduced in evidence. At that time she had no home or other property. Her husband was not supporting her and the children at the time of divorce. Her father was sick at the time.

■ Respondent testified as to a conversation with her father concerning the $6,-000.00 payment on the mortgage, but we do not think she is competent to testify against complainant as to that conversation because respondent has a pecuniary interest in the result of this suit, her father's estate is also interested in the result of the suit, and the interest of respondent is diametrically opposed to the interest of complainant. § 433, Title 7, Code 1940. If respondent wins, the estate will be smaller, and if respondent loses the estate will be larger by at least $6,-000.00.

■ A few days after this conversation, respondent took her book, which we understand to be a record of payments on the mortgage, to the Northport branch office of complainant bank and Mrs. Ford, an employee of the bank, marked in the book a credit of $6,000.00 on the mortgage debt. We do not think there can be any well-founded objection by complainant to the testimony proving the fact that this credit entry was made because testator's making of the payment for the credit is the foundation of complainant's lawsuit.

■ Respondent testified to further conversations with her father, but we think she

is also incompetent to testify as to statements made by testator in those conversations.

■ Complainant offered the testimony of testator's widow and two of his daughters, Mrs. Nelson and Mrs. Hagler, which is to the effect that testator stated that he intended for respondent to pay him the $6,000.00 he. paid on the mortgage debt. We are of the opinion, however, that the testimony of the widow and these two daughters is not to be considered for two reasons, to wit:

1. Because the widow and two daughters are incompetent under the dead man's statute.

2. Because the statements to which they testify are not contemporaneous with the payment but were all made afterwards.

We have already said that we think that the estate is interested in the result of this suit. We think that the widow and daughters also have a pecuniary interest in that result. If the complainant is successful, the estate will be larger. By the will, the widow takes a life interest in that estate and will have a pecuniary gain if the estate is larger. The daughters have a remainder interest in the estate and a pecuniary advantage if the estate is increased by the result of this suit.

■ The interest of respondent in this suit is squarely opposed to the interest of the other children and widow of testator. If the complainant is successful, respondent will be required to pay $6,000.00, or more, to complainant. After costs of administration and debts of testator have been paid, the widow will have a life estate in whatever is left of the $6,000.00 and the daughters will have a right to the remainder of the $6,000.00 after the life estate is terminated. We think it is an inescapable conclusion that the interest of respondent and the interest of the other daughters and widow are opposed within the meaning of the dead man's statute, § 433, Title 7, Code 1940.

The statute provides:

" . . . . no person having a pecuniary interest in the result of the suit . . . . shall be allowed to testify against the party to whom his interest is opposed, as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the suit . . . . "

The widow and two daughters testified that testator made certain statements concerning his payment of $6,000.00 on the mortgage and respondent's obligation to repay this amount to. testator. The alleged statements made by testator show that he intended that respondent be obligated to repay the $6,000.00 to the estate. We must decide, however, whether the widow and two daughters were competent to testify against respondent that testator made such statements.

The statute seems to require three conditions to exist in order to make the witness incompetent to testify as to statements by the dead man, to wit:

1. The witness must have a pecuniary interest in the result of the suit.

2. His interest must be opposed to the interest of the party against whom he is called to testify.

3. The estate of the deceased person who made the statement must be interested in the result of the suit.

We think all three conditions exist here.

■ It is a mistaken construction of the statute to assume that it does not prohibit the testimony if it is favorable to the interest of the estate, and the witness is called in behalf of such interest. Pfingstl v. Solomon, 240 Ala. 58, 63, 197 So. 12.

■ The competency of the witness is dependent upon the nature of the suit and whether the estate of deceased is interested. If the estate is not interested, there is no incompetency under the statute. If the estate ·

is interested, the witness is incompetent if he has a pecuniary interest in result of the suit at the time of trial, or if his status is such that he would be so interested if he had not transferred his interest. The widow and children of testator having such an interest in the result of the suit, and testator's estate being interested in that result, the widow and children are incompetent to testify as to any transaction with or statement by the testator unless he or she ". . . . '. . . . is called to testify thereto by the party to whom such interest is opposed.'" Niehuss v. Ford, 251 Ala. 529, 532, 38 So.2d 484, 487.

■■■ We are, therefore, of opinion that the widow and two daughters, Mrs. Nelson and Mrs. Hagler, were incompetent to testify against respondent as to statements made by testator which tend to show that respondent is indebted to testator for the $6,000.00 payment made by testator on the mortgage. It follows that such testimony should not have been considered by the trial court and should not be considered by this court under the lazy lawyer's statute. Act No. 101, 1943 Acts, page 105; 1958 Recompilation Code 1940, Title 7, § 372(1); Redwine v. Jackson, 254 Ala. 564, 49 So.2d 115.

Moreover, respondent objected to all material testimony given by the widow or Mrs. Nelson or Mrs. Hagler which tended to prove that testator made statements to the effect that respondent was indebted to testator for the $6,000.00 payment he made on the mortgage.

The theory on which complainant seeks to recover the $6,000.00 from respondent is the theory that the purchase of the Northport property, or at least the $6,000.00 payment, was intended to be for the benefit of the testator and not a gift or advancement to respondent or that testator became subrogated to the complainant's right to recover the mortgage debt to the extent of the $6,000.00 paid. As stated at the beginning of this opinion, complainant's claim is that testator's payment on the mortgage debt is, or is in the nature of, a resulting trust.

In Perry on Trusts, Fifth Edition, Little, Brown, and Company 1899, page 199, Chapter V, § 147, with respect to admissibility of declarations of the parties to an alleged resulting trust, we find the following statement:

"Whether a purchase in the name of a wife or child is an advancement or not, is a question of pure intention, though presumed in the first instance to be a provision and settlement; therefore, any antecedent or contemporaneous acts or facts may be received, either to rebut or support the presumption, and any acts or facts so immediately after the purchase as to be fairly considered a part of the transaction may be received for the same purpose. And so the declarations of the real purchaser, either before or at the time of the purchase, may be received to show whether he intended it as an advancement or a trust. Such declarations are received, not as declarations of a trust by parol or otherwise, but as evidence to show what the intention was at the time. They are parts of the transaction, or words accompanying an act. . . . . Of course, declarations made by the husband or father after the purchase are incompetent to control the effect of the prior transaction. But such declarations may be used by the wife or child against the purchaser to show that it was a settlement and not a trust. And the after declarations of the nominal grantee may be used against him, but not in his favor. But the declarations must be direct and certain, and where possible should be corroborated by other facts and circumstances; for courts will not act upon mere declarations, if they are conflicting, vague, or inconsistent with themselves."

■■■ We are of opinion that after testator had effectively completed the $6,000.00 payment on the mortgage, any statements subsequently made by testator are "incompetent to control the effect of the prior

transaction," when offered by the testator or those claiming under him, such as his personal representative, the complainant, or the beneficiaries under the will. As stated in Perry on Trusts, supra, such subsequent statements made by the testator may be used against him and those claiming under him by the donee or grantee to show that the transaction was a settlement and not a trust. Such statements, of course, must be proved by competent witnesses.

There is another witness who testified for complainant and against respondent as to the transaction whereby testator borrowed the $13,500.00 secured by the mortgage and the transaction whereby testator sold the thirty-five-acre tract and obtained a release of that tract from the mortgage. This witness testified that he was employed as an assistant vice-president of complainant and was manager of complainant's Northport branch. This witness acted for the complainant bank in both transactions. He testified that he was a stockholder in the complainant corporation at the time he testified.

In Adler v. Pin, 80 Ala. 351, in an action of trover, plaintiffs claimed title to a mule and cow, against the administrator of an intestate. This court held that the trial court correctly refused to admit testimony by the administrator that his intestate had made statements "that he had two mules on said premises which were" intestate's property. This court said:

"While it is admissible to prove the declarations of a party in possession of property, as explanatory of his possession, they must be proved by a witness competent to testify. As an exception to the competency of parties as witnesses, the statute provides: 'Neither party shall be allowed to testify against the other, as to any transaction with, or statement by, any deceased person whose estate is interested in the result of such suit.' The effect of the testimony of the defendant, which was excluded by the court, would have been, if believed, to increase the amount of the assets of the estate. In such case, the personal representative is incompetent to testify, as against the other party, to transactions with, or statements by his intestate. The exclusion extends to both the adversary parties.— Code, § 3058; Dunlap v. Mobley, 71 Ala. 102." (80 Ala. at page 353)

In the case at bar, the tendency of of the testimony of the assistant vice-president is to support complainant's contention that respondent is indebted to testator for $6,000.00. The tendency of this testimony is to increase testator's estate. Under the *Adler* case, the complainant, the executor of testator's will, if it were a natural person, would be incompetent to give such testimony against respondent. The executor is incompetent because the executor has a pecuniary interest in the result of this suit. The larger the estate, the greater the commission to which executor may be entitled. Title 61, § 377, Code 1940. We think the executor has a pecuniary interest in the result of the suit under § 433, Title 7, Code 1940.

The assistant vice-president is a stockholder in complainant. On an appeal by defendant, a corporation, from a judgment for plaintiff in an action for rent, this court held that defendant's witness, Ford, who was an officer and stockholder of defendant, was incompetent to testify as to an oral agreement allegedly made by Ford with plaintiff's agent Colvin, who had since died. This court said:

". . . . The question to the witness Ford, made the basis of assignment of error 14, related to this alleged oral lease, and the witness had previously testified that he was one of the incorporators of the defendant, was a stockholder therein and its general manager, and it was further shown that Colvin, with whom the contract was alleged to have been made, had since died.

"Under these circumstances, Ford had such pecuniary interest in the suit as to render him incompetent as a witness to testify as to the transaction with plaintiff's agent, Colvin. . . . ." Birm-

ingham Purchasing Co. v. Colvin, 219 Ala. 662, 665, 123 So. 45, 47.

In Wynn v. Tallapoosa County Bank, 168 Ala. 469, 504, 53 So. 228, in an action by a bank against the administrator of a deceased cashier for an accounting and lien on stock of decedent, this court held that the stockholders of the bank were not competent to testify as to transactions with the deceased cashier.

In Buye v. Alabama Marble Quarries, 199 Ala. 589, 75 So. 9, in an action against a corporation for wrongful death of plaintiff's intestate, this court reversed for error in admitting, over plaintiff's objection, the testimony of a stockholder of defendant as to a conversation with plaintiff's intestate. The court said that the witness, being a stockholder of the defendant corporation, was pecuniarily interested in the result of the suit and was not a competent witness as to any conversation between himself and intestate. The court said that a conversation between two persons is a transaction by each with the other, within the meaning of the statute, whether the actual talking be done by both or only by one.

█ In the case at bar, we hold complainant's stockholder incompetent to testify against respondent as to transactions with or statements made by testator.

█ Mrs. Nelson, sister of respondent, testified that about a week before testator died the witness had a conversation with respondent in which respondent said:

" . . . . that her sister, Mrs. Diehl had been raising hell because she found out that Papa had loaned her the money and she said she didn't know why she was up there raising hell because if anything happened to Papa she should have sense enough to know that it would go to the heirs and that she would get her part and that it was to be paid back. My father had diabetes, but was doing pretty well at the time. . . . . "

We do not know any reason why this testimony of Mrs. Nelson that respondent made the quoted statement is not competent evidence against respondent, and we think this testimony of Mrs. Nelson is due to be considered.

Complainant's assistant cashier, Edwards, testified that complainant's records show that testator applied the $12,000.00 received for the Wash Christian farm land to payment of testator's indebtedness to complainant. Out of the $12,000.00, apparently $11,989.22 was paid on testator's loans, after which he had $12.00 left. We understand that the $11,989.22 payment included the $6,000.00 paid on the mortgage. We do not understand that respondent objects to this testimony of the assistant cashier.

Another employee of complainant testified that he was handling testator's estate and that according to "our records," four claims for unpaid bills had been presented against the estate and had been verified and paid. These four claims total $726.15. The condition of the estate is not further shown. We assume that neither party would advance its cause by further showing the condition of the estate.

Counsel for respondent state in brief that "It is our recollection that the record contains no evidence whatever of any contemporaneous statement or declaration by Mr. Schofield concerning his purpose of making the payment for his daughter." This statement appears to be unchallenged by complainant.

There is evidence that testator was sued for a hospital bill in the amount of $385.60. The complaint was filed October 29, 1958. Testator's attorney testified that this action was settled by testator's agreeing to pay $375.00 at the rate of $20.00 per month.

There is testimony tending to show that testator was "short of funds" when he sold the Wash Christian farm land and needed money to pay some debts at the bank and elsewhere. There is testimony that his children gave money to testator during the

last year or two of his life. Some of this testimony is probably inadmissible because it is a conclusion or hearsay. We think, however, that enough evidence is admissible to show that testator did not have much cash available, but we do not think the evidence shows that he was destitute or even insolvent. The competent evidence does not justify a conclusion either way. A statement of his assets and liabilities is simply not in evidence as we understand it. Such a statement may not be available.

When the statements by and conversations with testator as testified to by complainant's witnesses are eliminated, as they must be, the evidence to show the circumstances as to the $6,000.00 payment on the mortgage favorable to complainant's contention that the respondent owes that amount to the estate, are simply that testator originally intended for respondent to pay the entire mortgage, that testator later paid $6,000.00 on the mortgage, that respondent said to Mrs. Nelson that testator had loaned her the money, that testator was short of money, and had diabetes but was doing pretty well at the time of payment.

Mrs. Myrtice Diehl, another daughter of testator, testified for respondent that about two months before testator's death, Mrs. Diehl had a conversation with testator as follows:

" . . . . I didn't discuss with my father the $6,000.00 payment that he made on Tysia Belle Taylor's debt, but when he wanted to borrow some money from me and I loaned it to him and after he did I said to him one night 'Father, does Tysia and Emmett owe you any money?' He said 'they don't owe me a damn dime. What I did for her was for her and those children.'

"At the time, she was having trouble with her husband and had been threatened previous to that so he told me what he had done, he didn't tell me what, but he said 'what I did was for her and those children.'

"This was about two months before his death . . . .

" . . . . . . . . . . . .

" . . . . I told my father that Mrs. Nelson had mentioned the fact that he had made a $6,000.00 payment on Tysia's mortgage. Yes, I told him this and I said 'Papa, does Tysia and Emmett owe you any money? Mrs. Nelson says you helped them get the home.' This was about two months before his death. I didn't mention the $6,000.00, I just mentioned money and I asked my father whether Tysia or her husband, Emmett, owed him any money and his answer was 'They don't owe me a damn dime. What I did for them was for her and her children.' She had three children."

■ Mrs. Diehl was testifying as to a conversation with or statments made by a deceased person whose estate is interested in the result of the suit. The interest of Mrs. Diehl is opposed to the interest of respondent. Mrs. Diehl has a pecuniary interest in the result of the suit. Nevertheless we are of opinion that this witness was competent to testify as to statements by testator because the witness was called to testify by the party to whom the interest of the witness was opposed.

In German v. Brown & Leeper, 145 Ala. 364, 39 So. 742, with respect to the waiver of the incompetency of a witness under the dead man's statute, the court said:

" . . . . Section 1794 of the Code of 1896 provides that 'no person having a pecuniary interest in the result of a suit shall be allowed to testify against the parties to whom his interest is opposed, as to any transaction with or statement by the deceased person whose estate is interested in the result of the suit or proceeding, . . . unless called on to testify thereto by the parties to whom such interest is opposed, etc.' " (145 Ala. at page 369, 39 So. at page 743.)

This court held that when plaintiff introduced answers of defendants to interroga-

tories filed by plaintiff, the plaintiff had called defendants to testify, and that defendants having answered that the deceased had employed defendants, the defendants were then competent to give in evidence the entire transaction with deceased.

In Green v. Ray, 222 Ala. 509, 133 So. 46, in an action on a note, plaintiff contended that the testimony of witnesses, embracing transactions with the deceased president of a bank was incompetent under § 7721, Code 1923, (§ 433, Title 7). The court said:

"But it is an answer to this objection that this witness was called to testify by defendant, the party to whom the interest of the witness as a stockholder is opposed. The argument therefore overlooks this exception in the statute. (Citations Omitted)" (222 Ala. at page 510, 133 So. at page 47.)

We come to consider the rules as to presumption for or against the creation of a trust when one person pays the purchase price and takes title in the name of another.

"An exception to the rule that the law will presume a trust on the legal estate in favor of one who pays the purchase money of land, the title to which is taken in the name of another, exists where a parent or husband furnishes the purchase money, and the title is taken in the name of his child or wife. In such case the presumption of intention to become the owner of the property arising from the payment of the purchase money is rebutted by the stronger counter presumption of an intention to make an advancement to the child or wife. Hence the presumption of such a trust does not arise from the mere fact that the purchase money is supplied by the parent, and the conveyance is taken in the name of a son. Hatton v. Landman, 28 Ala. 135. When, therefore, such relationship between the parties is shown by the averments of the bill, the presumption arising therefrom must be clearly rebutted by appropriate allegations. . . . ."

Long v. King, 117 Ala. 423, 430, 431, 23 So. 534, 536.

"It is well settled that: 'Where a person who purchases land in the name of another and pays the consideration money himself, is under a natural or moral obligation to provide for the person in whose name the conveyance is taken, such as the wife or child, no presumption of resulting trust arises, but the transaction will be treated prima facie as an advancement for the benefit of the nominal purchaser. The inference which the law permits to be drawn in this class of cases is based on the common knowledge and experience of mankind in regard to the motive that usually accompanies transactions of this character.' 26 R.C.L. 1225, § 71, and authorities cited under notes 8 and 9.

" . . . . . . . . . .

"Under our system of procedure, averments are as essential to the establishment of a cause of action in equity as proof, and in such case it is incumbent on one who claims the existence of such trust to establish it by clear, positive, and unequivocal averments and clear and satisfactory proof. (Citations Omitted)

"And whether an advancement was intended, or a trust results, depends on the character of the transaction at its inception. (Citations Omitted)" Swendick v. Swendick, 221 Ala. 337, 338, 339, 128 So. 593, 594.

"§ 164. It is further to be observed that voluntary conveyances to a wife or child were never within the rule that such gifts raised a resulting trust for the donor. In conveyances of this kind to the donor's family the analogy of the common law was followed, whereby, if a feoffment was made to a stranger without consideration, a use resulted to the feoffor; but if a feoffment was made to a wife or child, no use resulted, for the consideration of blood was held a good consideration, and an advance or settlement was presumed. . . . ." (Perry on Trusts, supra, at pages 222 and 223)

■ In the instant case, the only evidence which directly indicates that an advance was not intended is the testimony of Mrs. Nelson as to the statement made by respondent that testator loaned her the money. Against this is the testimony of Mrs. Diehl that testator said respondent did not owe him a dime. All other proof is circumstantial and rests wholly in inference. We are not persuaded that complainant has overcome the presumption of advancement or gift by clear and satisfactory proof.

At the most, we think, an intention to make an advancement might be found. In Little v. Ennis, 207 Ala. 111, 92 So. 167, this court held that payments by testator to a daughter were merely advancements. The daughter had executed instruments in writing whereby she did "agree to pay" and did "promise" to pay specified sums to the testator. The court said:

"... These advances do not create or indicate a debt due or owing from Lucille E. Little which would constitute an asset of the estate. .... These items, being nothing more than what should be regarded as advances under the statute had Mr. Ennis died intestate, cannot be charged to Mrs. Little, as her father did not die intestate. To hold that Mrs. Little should account for advances notwithstanding her father died testate would be opposed to the previous decisions of this court, and in effect make her account for advances without making the other children do so, in case they had received advancements. The law presumes that, when a person makes a will, he will thereby provide against what he has or may advance the beneficiaries therein named, and our statute with reference to advancements, and which is exclusive, is intended to apply only to the estate of an intestate." (207 Ala. at page 113, 92 So. at page 169.)

■ The instant decedent died testate and the advancement, if such it was, for respondent is not collectible.

■ Complainant cites Quillen v. Bell, 158 Md. 677, 149 A. 462, where the court considered a claim that a resulting trust for benefit of father had been created by conveyance to one of eight children. The court said the presumption of a gift, ordinarily drawn from a conveyance to a child by a parent, is weakened in this instance by the fact that so much was conveyed to one child out of eight children living. Nevertheless, the appellate court found that a resulting trust had not been established, reversed the trial court, and dismissed the bill of complaint. The fact of gift to one of eight children is merely a circumstance to be considered. It does not change our view here, although we have considered the fact.

In East v. Karter, 225 Ala. 556, 144 So. 26, this court held that payments on a mortgage were for the benefit of a child and not for the benefit of a parent who made payments on the mortgage out of rents collected from the mortgaged property. This court said:

"... Ordinarily payments by a parent for a child, in the absence of explanation, are presumed to be a donation to the child. Montgomery v. McNutt, 214 Ala. 692, 108 So. 752; Waddail v. Vassar, 196 Ala. 184, 72 So. 14; Veitch v. Woodward Iron Co., 200 Ala. 358, 76 So. 124; Long v. King, 117 Ala. 423, 23 So. 534." (225 Ala. at page 558, 144 So. at page 27.)

While the facts in East v. Karter are not the same as in the case at bar, the following statement in the opinion seems to fit here:

"We cannot permit what may turn out to be an inequality in the distribution of the estate, to prevent the legal consequences of a clearly defined state of circumstances. We must allow legal principles to govern the situation, whatever the result. ...." (225 Ala. at page 558, 144 So. at page 27)

We are of opinion that complainant is not entitled to relief and that its bill of complaint should be dismissed. The decree is

reversed and the cause remanded so that a decree in accordance with this view may be entered.

Reversed and remanded with directions.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.