MADDOX, Justice.
The dual issues brought before this Court on appeal involve a lease and whether the trial court committed reversible error by admitting the testimony of certain witnesses regarding statements made by the deceased concerning the lease and whether the trial court’s construction of a renewal provision contained in the lease was proper.
On January 31,1952, Milford Johnson and wife, Mae Johnson, as lessors, entered into a long term lease with J. E. Hudson, R. G. Heath, F. M. Heath, Max Watkins, Dr. J. F. Stanley, Dr. J. T. Grimes, Graymon Brun-son, B. L. Kelley, C. M. Capps and Thomas I. Speigner, as lessees. This written lease replaced another written lease that had been originally entered into on January 29, 1951, by the lessors and five of the named lessees. The lease provided for the rental of the lessees by the lessors of a tract of land in Coffee County, Alabama, for the purpose of erecting a fishpond. The property which was the subject of the lease consisted of approximately eight to ten acres, located in a tract of land consisting of a total of 80 acres. The lease was for an initial period of thirty years “with an option for another thirty-year period.” The lease did not specify who had the option to renew for another thirty-year period, nor did it provide for the amount of rent upon renewal. The lease also contained a provision that if the lessors should sell the remainder of the 80 acres of land, the lessees would have the option to buy the land which is the subject matter of the lease, including a right-of-way, for the sum of $1,000.
Milford Johnson, one of the original lessors, died on June 19, 1980, and in 1981, the original thirty-year period of the lease being about to expire, the present lessees (under the terms of the lease) negotiated with Mrs. Mae Johnson, the widow of Milford *86 Johnson, who was also named as a lessor in the lease, for renewal of the lease for an additional thirty-year period. Mrs. Mae Johnson refused to renew the lease, asserting that the lessees had not paid the ad valorem taxes as required by the lease, and this lawsuit was then filed by the lessees, requesting that the Court determine the rights of the parties under the lease and adjudge that the lessees were entitled to renew the lease for the additional thirty-year term. The lawsuit was filed against Mrs. Mae Johnson, individually, and in her capacity as administratrix of the estate of Milford Johnson, deceased, and was tried without a jury.
The lessees, as plaintiffs, called three witnesses: Mrs. Mae Johnson, as a hostile witness; J. E. Hudson and Dr. B. R. Justice. The surviving lessor, Mrs. Mae Johnson, as defendant, testified in her own behalf, and she did not call any other witnesses.
Over continuing objection of the defendant that his testimony was barred by the Dead Man’s Statute, Mr. Hudson was allowed to testify to certain conversations that he had with Mr. Johnson to the effect that Mr. Johnson did not want the club to pay the taxes, because the taxes would not be much, and he was afraid that if they built cabins on the property .it would cause his taxes to go up on his other property. Mr. Hudson was also allowed to testify, over continuing objection, that he offered to Mr. Johnson to pay the taxes that year but was told by him not to pay them, and that the taxes were never mentioned between them anymore. Dr. B. R. Justice, another of the plaintiffs, was called as a witness by the plaintiffs and allowed to testify, over objection by the defendant that the testimony was barred by the Dead Man’s Statute, that he had two conversations with Mr. Johnson before Mr. Johnson’s death about the taxes. The only other witness in the ease was Mrs. Mae Johnson, who was called as a hostile witness by the plaintiffs and who also testified as a witness in her own behalf.
Following the trial of the case, the court concluded that the witnesses, J. E. Hudson and B. R. Justice, were competent to testify and that the Johnsons acquiesced in the failure of the plaintiffs to pay taxes for 30 years and were therefore estopped to resist extension of the lease as provided in the option. The court further ordered that the defendant execute a renewal lease, if one was required, and restore possession to the plaintiffs and all privileges and rights provided in the lease. The defendant filed a motion to alter, amend, or vacate the judgment, or, in the alternative, for new trial, which was denied, and this appeal followed.
Our first issue to consider is whether the trial court’s permitting J. E. Hudson and B. R. Justice, who are also parties in the instant case, to give testimony of their conversations about transactions with Milford Johnson violated the express terms of this state’s “Dead Man’s Statute.” This statute, Code 1975, § 12-21-163, reads:
“In civil actions and proceedings, there must be no exclusion of any witness because he is a party or interested in the issue tried, except that no person having a pecuniary interest in the result of the action or proceeding shall be allowed to testify against the party to whom his interest is opposed as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the action or proceeding or when such deceased person, at the time of such transaction or statement, acted in any representative or fiduciary relation whatsoever to the party against whom such testimony is sought to be introduced, unless called to testify thereto by the party to whom such interest is opposed or unless the testimony of such deceased person in relation to such transaction or statement is introduced in evidence by the party whose interest is opposed to that of the witness or has been taken and is on file in the case. No person who is an incompetent witness under this section shall make himself competent by transferring his interest to another.”
We have noted that this statute seems to require that three conditions exist in order to make a witness incompetent to testify as to statements by a deceased, to wit:
*87 1. The witness must have a pecuniary interest in the result of the suit.
2. His interest must be opposed to the interest of the party against whom he is called to testify.
3. The estate of the deceased person who made the statement must be interested in the result of the suit.
Taylor v. First National Bank of Tuskaloosa, 279 Ala. 624, 630, 189 So.2d 141 (1966).
As for the first two conditions, the witnesses in this case each had a pecuniary interest, See Manegold v. Massachusetts Life Ins. Co., 131 Ala. 180, 31 So. 86 (1901), and their interests were clearly opposed to the party against whom they were called to testify. With regard to the third and final condition, the Court has said:
“The competency of the witness is dependent upon the nature of the suit and whether the estate of deceased is interested. If the estate is not interested, there is no incompetency under the statute. If the estate is interested, the witness is incompetent if he has a pecuniary interest in result of the suit at the time of trial, or if his status is such that he would be so interested if he had not transferred his interest. The widow and children of testator having such an interest in the result of the suit, and testator’s estate being interested in that result, the widow and children are incompetent to testify as to any transaction with or statement by the testator unless he or she ‘. . .. “... . is called to testify thereto by the party to whom such interest is opposed.” ’ Niehuss v. Ford, 251 Ala. 529, 532, 38 So.2d 484, 487.”
Taylor v. First National Bank of Tuskaloosa, 279 Ala. 624, at 630-31, 189 So.2d 141, at 146 (1966).
Based on the facts as they appear in the record, we hold that the estate does have an interest because the rental payments due under the lease constitute rental income, depending, of course, upon this Court’s interpretation of the renewal provision. See Hanks v. Hanks, 281 Ala. 92, 99, 199 So.2d 169 (1967). Thus, each condition specified in Taylor v. First National Bank of Tuska-loosa, supra, exists in the present case and the witnesses Hudson and Johnson were not competent to testify as to their conversations with the deceased. Because the trial court erred in allowing the testimony of these two witnesses, its judgment is due to be reversed.
Although the case must be retried, we think it appropriate to address at this time the interpretation of the renewal provision in this lease. The renewal provision contained in the lease reads: “[S]aid lease shall run for a period of 30 years with an option for another 30-year period.” Appellant maintains, because nothing is mentioned in this provision as to the amount of rent to be paid, that the entire provision is indefinite and uncertain and, therefore, inapplicable. Appellant likewise contends that there is no basis whatever for an adjudication that plaintiffs are entitled to an extension on “like terms” as the trial court order provides, because this makes a new or different contract for the parties and adds to the terms of the contract, words, terms or conditions not contained in it.
Since this Court has not made any previous ruling concerning requirements of a renewal provision in a lease, we look to other jurisdictions for guidance.
“The rule is well established that a general covenant to renew or extend a lease which makes no provision as to the terms of renewal or extension implies a renewal or extension upon the same terms as provided in the original lease, and is sufficiently definite and certain to be enforceable. This rule applies with particular force with respect to the term or length of time of the renewal or extension. The rule is subject to the exception, however, that under a general covenant to renew, the lessee is not entitled to have inserted in the renewal lease a covenant for a further renewal. Moreover, a clause or provision clearly applicable only to the original lease is not carried forward into a new lease for an additional term. Thus, a clause in a lease that failure of the lessee to give notice of desire to cancel shall be considered as *88 evidence that he desires to continue the lease in force for another year gives the lessor no right to demand the execution of a new lease containing a similar clause.” [Footnotes omitted.]
50 Am.Jur.2d Landlord and Tenant § 1159 (1970). The Court of Appeals of the State of Georgia offers the following with regard to renewal provisions in leases:
“The general rule is that where a lease for a stated period at a stated price contains an option of renewal which fails to specify either the duration of the new term or the amount of rent, the intendment is that the renewal applies to a new term of the same duration for the same rent, and the fact that the rental value has increased in the meantime is immaterial .... The tenants having exercised their option to renew the lease by proper and timely notice, they are entitled to the occupancy of the premises for the additional five year term.”
Saunders v. Sasser, 86 Ga.App. 499, 71 S.E.2d 709, 711-712 (1952); See Crossman v. Fontainebleau Hotel Corp., 273 F.2d 720 (5th Cir. 1959); See also Miller v. Clemons, 276 S.W.2d 650 (Ky.1955). In the instant case, the only term not specified in the renewal provision is the rental amount; however, we follow the general rule of other jurisdictions that the lease implies an extension upon the same terms, and thus the rent remains $100 a year.
Appellant’s contention that renewal of this lease on the “same terms” would result in a new and different agreement is not supported by the facts in this case. The renewal provision in this lease merely constitutes an extension of the present lease. The following distinction between a “renewal” and an “extension” is made:
“As a general thing, courts which, in considering the necessity of a new lease contract when an option is given the lessee for an additional term, recognize a distinction between ‘renewal’ provisions and ‘extension’ of the lease, agree that the latter form of option does not require or contemplate execution of a new lease but simply a continuance of the original one for a further time upon compliance with the conditions for its exercise. Thus, a distinction is made between a covenant to renew and a lease for a stated term with the privilege given the lessee to hold for a further term; in the latter case, where the privilege is claimed, the original lease operates as a present demise for the additional term without any necessity for a new lease. In such case, the lessor cannot be compelled to execute a lease for the additional term, since the original lease becomes a lease for such additional term by the tenant’s exercise of the option to remain. So, an option for an extension does not require a new lease. Generally, a lease for a definite term ‘with the privilege’ of having the same premises for an additional term at the same rent, at the option of the lessee, is regarded not as a covenant for renewal of the lease at the lessee’s option, contemplating the execution of some further instrument, but rather as a provision contemplating continuance of the lease already in existence so that the lessee by holding over without notice becomes entitled to the additional term. Also, in some instances, it has been held in jurisdictions which distinguish between ‘renewal’ and ‘extension’ provisions in leases that in the absence of an express stipulation that a new lease is to be executed, there is a presumption that no new lease is intended by the parties to a lease agreement which gives the lessee the opportunity of retaining the premises beyond the original period. On the other hand, many of the courts which recognize the distinction between ‘renewal’ and ‘extension’ provisions hold or state that an option or provision for renewal contemplates the making or execution of a new lease contract or agreement for the additional term stipulated for in the option.
“In some of the cases which hold the execution of a new lease unnecessary, any distinction between a renewal and an extension seems not to have been regarded. Thus, many courts hold that no new lease is necessary or contemplated under an option either for renewal or for an extension.” (Footnotes omitted.)
*89 50 Am.Jur.2d, Landlord and Tenant § 1180 (1970).
The facts of this particular case are important to our conclusion that the renewal provision included in this lease is an extension and not a renewal. The land leased by appellees from the appellant and her deceased husband was leased for the purpose of building a pond and cabins for a private fishing club. The fact that the appellees at their expense constructed the pond and erected a cabin and the parties initially signed a 30-year lease with a renewal provision indicates that the trial court, in reviewing the evidence, was authorized to find that the parties contemplated a long term arrangement based on the terms of the single lease without their having to execute some further instrument in the future. This is a reasonable inference which the trial court could draw, considering that the lessors reserved the same fishing rights as club members and there was not a notice of renewal provision requirement set forth in the terms of the lease. Consequently, the Court did not err in holding that the renewal provision contemplated an extension of the terms of the lease for an additional 30 years, at $100 a year, and that the parties were not required to execute a new instrument.
Because the trial court erred in allowing the testimony of witnesses Hudson and Justice over timely and appropriate objection, the judgment is reversed and the cause is remanded for a new trial.
REVERSED AND REMANDED.
TORBERT, C. J.; and JONES, SHORES and BEATTY, JJ., concur.