BEATTY, Justice.
Woodrow and Clara Watson brought this action initially against Dewey and Florence Gholson to recover possession of a certain tract of land in Baldwin County. The Ghol-sons filed a counterclaim against the Wat-sons and filed a third-party complaint against William Dale Permenter and Elizabeth A. Permenter, Ponderosa Farms (a Florida general partnership), and William Otis Wakeman and Edna Young Wakeman. That counterclaim and the third-party complaint alleged an erroneous legal description in the deed from the Wakemans to the Gholsons and prayed for reformation of that deed under Code of 1975, § 35-4-150. The defendants made a general denial.
A summary judgment motion filed by the Gholsons was denied. Thereafter, the death of Woodrow Watson was suggested on the record.
Ponderosa Farms amended by realigning as a party plaintiff and by alleging the facts of the original complaint, adding that it, Ponderosa Farms, was the lawful owner of the property in question and that the Watsons had the right of possession under a contract for sale to them from Ponderosa Farms. All plaintiffs filed a second amended complaint alleging trespass to the land in question by the Gholson defendants.
Later, a third amended complaint was filed by plaintiffs. To avoid convolution, that amendment is reproduced here:
“I. PARTIES
“The original Plaintiffs are Woodrow Watson and Clara Watson ... who were purchasers under a contract of sale with Ponderosa Farms, a Florida partnership. The Florida partnership was added by amendment in response to a motion to dismiss for failure to join necessary party-
“The defendants are Mr. and Mrs. Dewey Gholson ... and [they] are the owners in fee simple of a parcel of land with dimensions of 419.8 feet by 209.9 feet located in the southwest corner of the southwest quarter of the southwest quarter of Section 9, Township 6 South, Range 5 East.
“Third-Party Defendants added by Defendants are the Watsons (the initial Plaintiffs), Ponderosa Farms (the added Plaintiff and vendor), Mr. and Mrs. Per-menter (the predecessors in title of Ponderosa Farms), and William Otis Wakeman, deceased, and Edna Young Wakeman (the base title holders for all properties involved).
“II. CHAIN OF TITLE
“It is undisputed that the chain of title involved is as follows:
“A. Gholsons’ chain of title:
“1. The base deed (for both chains of title) is a warranty deed from Gerald C. Coggin and others to W.O. Wakeman, recorded in Deed Book 250, page 323, conveying to Mr. Wakeman a 40-acre tract described as the southwest quarter of the southwest quarter of Section 9, Township 6 South, Range 5 East, Baldwin County.
“2. The deed to the Defendants was the second deed executed by Mr. and Mrs. Wakeman and the first to be executed in the area involved. The warranty deed from Mr. and Mrs. Wakeman to Mr. and Mrs. Gholson is dated July 10, 1972, and recorded in Deed Book 431, page 669, and describes a parcel of land 419.8 feet by 209.9 feet located in the southwest corner of the southwest quarter of the southwest quarter of the section involved. This land was conveyed to the Gholsons pursuant to an earlier contract of sale between the Gholsons and the Wakemans.
“B. Plaintiff’s chain of title:
“1. The base deed for Plaintiffs is the common deed into W.O. Wakeman referred to above (DB 250/323).
“2. In September, 1972, Mr. and Mrs. Wakeman conveyed their remaining property in the southwest quarter of the southwest quarter to John C. and Mary Donovan, by deed dated September 13, 1972, recorded at Deed Book 434, page 72, which described the quarter quarter involved less and except three other parcels, the second in chronology being the *595 lands conveyed to the Defendants, Mr. and Mrs. Gholson.
“3. In January of 1977, Mr. and Mrs. Donovan conveyed their holdings in the quarter quarter involved to Mr. and Mrs. Permenter by deed dated January 20, 1977, and recorded in Deed Book 508, page 690.
“4. In March of 1981, Mr. and Mrs. Permenter conveyed their property to Ponderosa Farms by deed dated March 4, 1981, and recorded in Real Property Book 86, page 1380.
“5. On December 18,1981, Ponderosa Farms executed a contract of sale with Woodrow W. Watson, Sr., Clara Watson and Woodrow W. Watson, III (the latter has never been joined as a party).
“III. PLEADINGS AND CONTENTIONS
“This lawsuit was begun as a suit for ejectment by two of the purchasers under the contract of sale (Woodrow Watson and Clara Watson only).
“Ponderosa Farms was a real party in interest (as the reported owner of certain properties). Woodrow W. Watson III has never joined in any claim asserted.
“The Defendants (Mr. and Mrs. Ghol-son) filed an answer denying the allegations of the complaint and a third-party complaint against others in the chain of title pursuant to Code of Alabama 1975, § 35-4-150, to correct what may be an erroneous description in their deed (depending upon proof by the Plaintiffs as to the location of the southwest corner of the quarter quarter involved).
“The Defendants contend that Mr. Wakeman (the source of base title for all involved) sold them their property in 1972, located in the extreme southwest corner of the southwest quarter of the southwest quarter of the section involved. They contend that Mr. Wake-man represented to them that the point of beginning for the two acres they wished to buy was the southwest corner of the quarter quarter involved and that the specific point of beginning was located on the right-of-way line of an existing paved highway and then extended east from that point along the section line a distance of 419.8 feet, then north 209.9 feet, then west 419.8 feet, and then south 209.9 feet.
“The Defendants have occupied the property as their home since 1970, assessed and paid taxes on the property, claimed it adversely against the entire world including all parties named in the lawsuit.
“The Plaintiff Ponderosa Farms is believed to contend that the southwest corner of the quarter quarter involved should be located somewhere in the paved road adjoining that property, and that the distance from that point to the side of the right-of-way, where the Ghol-sons contend Wakeman started measuring their property, should be included in whatever property the Gholsons own, thus deducting from the Gholsons’ property a strip of land approximately 40 feet in width by 209 feet located on the east end of Mr. and Mrs. Gholson’s property.
“The Gholsons contend that they own the strip of land involved under either of two theories:
“(1) Mr. Wakeman was right in his representations as to the accepted point of beginning for their property, in which case their prior deed (1972) conveys fee simple title to them of all property involved.
“(2) Alternatively, in the unlikely event that Mr. Wakeman either falsely represented the point-of-beginning or the Plaintiff proves a point-of-beginning other than as represented to the Gholsons, then the Gholsons have adversely possessed, and utilized all of the property involved from 1972 through the November, 1984, filing date of this lawsuit. And, in the event of any Court ruling concerning the location of the corner involved, the Gholsons ask for reformation of their deed by Statute.”
What transpired thereafter is reflected in the final decree rendered by the trial court, which follows:
*596 “This cause being regularly set for hearing on the 21st day of August, 1985, and the parties being personally present and represented by their attorneys of record, the Court proceeded to hear the evidence.
“At the close of the evidence and arguments by counsel, the Court orally ordered that counsel for the parties file briefs on the question of adverse possession insofar as the disputed strip of land was concerned.
“Defendants/Third Party Plaintiffs were to file said brief within two weeks whereafter counsel for the Plaintiffs/Third Party Defendants was to reply to said brief within ten days.
“As of this date, over two months after said hearing, there has been no brief filed by Defendants/Third Party Plaintiffs.
“On or about October 14, 1985, Plaintiffs/Third Party Defendants moved this Court to render a decree and order in this matter without the benefit of briefs. It is the opinion of this Court that said motion is well taken and due to be granted.
“Upon hearing the evidence on August 21, 1985, the Court is of the opinion that certain relief, and findings of fact and law are due to be determined.
“It is therefore, ORDERED, ADJUDGED AND DECREED as follows:
“1. That the relief prayed for by the Plaintiffs/Third Party Defendants for the Court to render a decree and order in this matter without benefit of briefs is granted.
“2. That all relief prayed for by the Plaintiffs/Third Party Defendants for damages against Defendants/Third Party Plaintiffs is hereby denied.
“3. That the prayer for relief heretofore filed by Defendants/Third Party Plaintiffs for reformation of their deed in question is hereby denied, as the Court has found as a fact that there was no mistake in the legal description on the deed from William Otis Wakeman and Edna Young Wakeman to Dewey Ghol-son and Florence Gholson, dated July 10, 1972, recorded in Deed Book 431 at page 669.
“4. That the Court finds as a fact that the disputed strip of land made subject matter to this proceeding being approximately 209.9 feet by approximately 32.7 feet, which said disputed strip lies immediately to the East of the Easternmost boundary of the property described in the deed referred to above, and more particularly described as follows:
“Commencing at the Southwest corner of Section 9, Township 6 South, Range 5 East, Baldwin County, Alabama; run thence South 89°52'35" East along the South line of Section 9 a distance of 419.80 feet to the Point of Beginning of the property herein described; run thence North 0°11'15" West a distance of 209.9 feet to a point; run thence in an Easterly direction and parallel to the Southern boundary of the property herein described a distance of 32.7 feet more or less to a point; run thence in a Southerly direction and parallel to the Western boundary of the property herein described a distance of 209.9 feet more or less to a point on the Southern boundary of said Section 9; run thence in a Westerly direction along said Southern boundary of said Section 9, 32.7 feet more or less to the Point of Beginning.
“It is intended that this land is a strip of land approximately 209.9 feet by 32.7 feet more or less.
“has not been adversely possessed to the extent required by law for title to ripen in the Defendants/Third Party Plaintiffs based upon the evidence presented at trial.
“5. That the Defendants/Third Party Plaintiffs, Dewey Gholson and Florence Gholson, are to remove immediately any and all fences which have been erected on the Northern, Southern, and/or Eastern boundaries on the above described disputed strip of land or anywhere within its confines.
*597 “6. That Ponderosa Farms, a Florida general partnership, and a Third Party Defendant to this lawsuit is the fee simple owner of said disputed strip of land, and that Plaintiffs/Third Party Defendants, Woodrow Watson and Clara Watson, their heirs, successors, and assigns are legally entitled to the possession thereof pursuant to that certain Contract For Sale And Purchase between said Ponderosa Farms, a Florida general partnership, and themselves.”
Defendants raise several issues on appeal. These deal with the propriety of denying defendants’ motion for summary judgment, the correctness of a ruling excluding certain evidence, and the correctness of the trial court’s decree awarding plaintiff Clara Watson possession of the disputed land.
We affirm the judgment of the trial court.
I.
Defendants maintain that the trial court should have granted their motion for summary judgment, because the materials before the trial judge showed that plaintiffs were proceeding in their ejectment action as vendees under their contract with Ponderosa. Implicit in defendants’ argument is the contention that plaintiffs did not have the right of immediate possession, which is the gravamen of an ejectment action. Code of 1975, § 6-6-280; State v. Broos, 257 Ala. 690, 60 So.2d 843 (1952). Respectfully, we must point out that the contract itself, by its express terms, gave delivery of possession to the vendees, the Watsons, on its execution: “It is agreed that possession of the property will be delivered upon the execution of this instrument.” Moreover, before the trial court ruled on the motion for summary judgment, Ponderosa Farms realigned as a party plaintiff and expressly acknowledged that the Watson plaintiffs “ha[d] the lawful right to present possession of same under the Contract For Sale And Purchase between the co-plaintiffs.”
With those facts before it, the trial court was correct in denying summary judgment for the defendants. Rule 56, A.R.Civ.P.
II.
The defendants also contend that the exclusion of certain testimony, on the ground that it violated the dead man’s statute, Code of 1975, § 12-21-163, was erroneous. During the direct examination of Mr. Ghol-son, this exchange occurred:
“Q. If you would step down, please sir, and looking at the plat that’s on the board here before you will you show the judge, first of all, what Mr. Wakeman-told you your point of beginning was?
“A. There’s an iron pipe right here—
“Q. Do you see a letter?
“A. —and old post.
“Q. A‘B’?
“MR. MacLEOD: I want to offer an objection for the record. It’s been established that Mr. Wakeman is dead. Any conversations between him and Mr. Wakeman would definitely violate the Dead Man’s Statute.”
The trial court sustained the objection.
The record fails to disclose whether the response of the witness was an attempted narrative of a prior statement of the deceased, Mr. Wakeman, or of a description of something revealed on a board as an aid to memory. Nevertheless, it is clear that the trial court refused prospectively to allow any evidence of a conversation between this witness, a co-defendant, and Mr. Wake-man, the defendants’ predecessor in title.
The defendants contend that, because defendant Dewey Gholson’s deposition was taken and during it he was questioned about conversations with Mr. Wake-man, he is a competent witness within the dead man’s statute, even though his deposition was not introduced into evidence. But this question was answered in Bank of the Southeast v. Koslin, 380 So.2d 826 (Ala.1980), in which this Court held at 830:
“We now hold that the voluntary act of taking the deposition of, or serving inter *598 rogatories upon, one who would otherwise be incompetent as a witness in a particular civil action does not waive the incompetency of the witness unless the deposition or answers to the interrogatories are offered or introduced into evidence in the cause. See Annotation: Deposition — Waiver of Incompetency, 23 A.L.R.3d 389.”
According to the record, the deposition in question was not offered into evidence, hence, there was no waiver of the witness’s incompetency.
Defendants also maintain that the dead man’s statute, in any event, did not apply to the subject conversations.
In Koslin, supra, at 829, this Court noted:
“In order for the dead man’s statute to disqualify a witness from testifying about his dealings with a deceased individual, three criteria must be met: (1) the estate of the deceased must be interested in the outcome of the suit; (2) the witness must have a pecuniary interest in the result of the proceedings; and (3) the testimony of the witness must relate to a personal transaction with the decedent....”
See Code of 1975, § 12-21-163; Taylor v. First National Bank of Tuskaloosa, 279 Ala. 624, 189 So.2d 141 (1966). It is clear from the record that Mr. Wakeman, the deceased, was the immediate predecessor in title to the defendants, the Gholsons, and that he was also the predecessor in title to Ponderosa Farms, which was the immediate predecessor in title to the plaintiffs, the Watsons. A ruling for the defendants, the Gholsons, in their claim for reformation, or on their contention of adverse possession since their deed from the Wakemans, could subject the Wakeman estate to a breach of warranty claim; so the estate of the late Mr. Wakeman is interested. It is also clear, moreover, that Dewey Gholson, the testifying witness, had a pecuniary interest in this ejectment and trespass suit, because he is one of the persons claiming to be an owner of the land in dispute. Likewise, any testimony from Mr. Gholson about his dealings with Mr. Wakeman concerning the land in question obviously would have related to a personal transaction between that witness and the deceased. Thus, the trial court’s ruling was not in error.
III.
Finally, the defendants maintain that by adverse possession they have held the entire tract of land represented by the legal description contained in their deed, including the disputed strip of land 32.7 feet in width.
The case was tried ore tenus without a jury, and the court found no adverse possession sufficient to ripen into title. In adverse possession cases,
“The burden rests upon the party asserting the adverse claim to prove actual, hostile, open, notorious, exclusive, and continuous possession for the statutory period, Grooms [v. Mitchell, 426 So.2d 820 (1983) ], and such proof must be by clear and convincing evidence. Storey v. Patterson, 437 So.2d 491 (Ala.1983). Whether the evidence establishes adverse possession is a question of fact, the determination of which, when made upon evidence presented ore tenus, is favored with a presumption of correctness and will not be disturbed on appeal unless plainly wrong or manifestly unjust. Smith v. Clark, 341 So.2d 720 (Ala.1977).”
Tidwell v. Strickler, 457 So.2d 365, 368 (Ala.1984).
In this case, the plaintiffs proffered evidence of record title to the strip in dispute. Plaintiffs introduced evidence of a professional land surveyor, whose testimony concerning the boundary lines of the Gholson tract was consistent with the disputed strip not being included in the description contained in the Gholson deed.
Although under one view, the evidence of the Gholsons tended to establish adverse user of the land, some of the testimony concerning adverse possession was vague on the point of the specific area claimed and used. For example, a fence erected by the Gholsons to include the strip was *599 shown to have been placed in 1984, some 12 years after they received their deed and during the same year this lawsuit was filed. Additionally, some of the evidence tended to indicate a lack of continuous user. Moreover, some of the witnesses testified with reference to a survey and exhibits, without the record disclosing their exactitude. As stated in Scarbrough v. Smith, 445 So.2d 553, 555 (Ala.1984): “Evidence in adverse possession cases is especially difficult to weigh from the vantage point of an appellate court. Witnesses often testify with references to exhibits and make gestures not capable of preservation in the record.”
Having examined the testimony, we conclude that the judgment of the trial court denying the defendants’ claim of adverse possession was not palpably wrong. Tidwell, supra. To the contrary, under the evidence, the claim of the plaintiffs to the tract of land in question was established by the evidence. Accordingly, the judgment rendered below must be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, AL-MON and HOUSTON, JJ., concur.