Jacob Lowrey III, J.F.B. Lowrey, Jr., Sandra Lowrey Robinson, and Buche Lowrey Tiernan ("the appellants") appeal from a judgment granting a "Petition for Modification" of a consent judgment governing the administration of two trusts.
 Facts and Procedural History
This case stems from two testamentary trusts created under the wills of J.F.B. Lowrey and Eloise Russell Lowrey, husband and wife. Mr. Lowrey died in 1954, and Mrs. Lowrey died in 1965. The principal assets of the trusts are tracts of timberland in Monroe and Conecuh Counties. The trusts terminate 20 years after the death of the survivor of the children and grandchildren who were living at the time Mr. and Mrs. Lowrey executed the wills.[1]
Mr. and Mrs. Lowrey appointed their son, Samuel Lowrey, Sr., to serve as the sole trustee. The will provided that in the event Samuel Lowrey, Sr. should die before the termination of the trusts, the court that administers the trusts shall name a "proper and suitable person" to fill the vacancy.
In 1981, Lowrey McNeel and Alan McNeel ("the McNeels") sued Samuel Lowrey, Sr., alleging that he had breached his fiduciary duties. That action was settled by an agreement of the parties in 1984. In 1988, the McNeels filed a second action against Samuel Lowrey, Sr., alleging that he had breached the 1984 settlement agreement and seeking to remove him as trustee. In 1990, the court entered an order adopting a "consent decree" submitted by the parties. The order appointed AmSouth Bank, N.A. ("AmSouth"), as cotrustee with Samuel Lowrey, Sr., and made some provisions regarding distributions to the income beneficiaries.
In 1992, the McNeels filed a "Petition to Remove Co-Trustee." A guardian ad litem was appointed to represent the interests of the contingent beneficiaries. On January 13, 1993, the parties reached a settlement agreement, which became effective on that day. Pursuant to the settlement agreement, the trial court entered an order that (1) appointed AmSouth as sole trustee for the trusts for a term of three years; (2) established a steering committee to act as a consultative body, having no authority other than the authority to remove AmSouth by unanimous consent of the committee members (Lowrey McNeel, Alan McNeel, Sam Lowrey, Jr., and Jacob Lowrey III); (3) provided that the steering committee would succeed AmSouth as trustee upon the expiration of its three-year term unless the committee unanimously agreed to the continuation of AmSouth as trustee; and (4) authorized *Page 451 
substantial increases in distributions for income beneficiaries. The order also provided that the trial court would "be the arbiter of all disputes relating to both the consummation and implementation of the agreement," and that the court would "retain jurisdiction of this matter for all purposes." The steering committee held several meetings, until February 1996, when Anne McMillan and Shelby Jones filed a "Petition for Appointment of Successor Trustee and Other Relief," challenging the appointment of the steering committee members as trustees of the trusts. In March 1996, AmSouth filed a "Petition for Accounting, Instructions Concerning Successor Trustees, and Final Discharge." The court extended, pending further order, the time during which AmSouth could serve as trustee. In March 1997, the appellants filed a "Petition to Enforce Judgment and to Implement Substitution of Trustees," wherein they asked the trial court to enforce the settlement agreement and order of January 13, 1993. Shortly thereafter, the McNeels filed a "Petition for Modification," in which they requested that the trial court set aside the January 13, 1993, order and appoint AmSouth as sole trustee indefinitely.
The petitions were set for trial on June 22, 1998. The trial court entered an order on June 24, 1998, modifying the January 13, 1993, order, but it later amended this order, on August 3, 1998. The amended order provided that AmSouth would continue to act as trustee for a period of three years. The amended order also provided that a steering committee, consisting of all current income beneficiaries, would exist to facilitate communications between AmSouth and the beneficiaries. The trial court concluded that at three-year intervals the steering committee would have the power to terminate AmSouth as trustee and select a different corporate trustee.[2]
The appellants argue that the trial court erred in setting aside provisions of the settlement agreement and consent judgment of January 13, 1993, when there had been no allegation or evidence of fraud, accident, or mistake; and that the trial court lacked authority to displace the steering committee established by the January 13, 1993, consent judgment, because the members of the committee became trustees by operation of law when at the end of the three-year term the members did not unanimously vote to continue AmSouth as trustee. The appellees argue that the trial court did not abuse its discretion in modifying its 1993 order to allow AmSouth to continue as sole trustee of the trusts. For the reasons set out below, we affirm the trial court's judgment.
 Standard of Review
The trial court, after hearing over two days of oral testimony, modified its previous order, which would have allowed a family steering committee to act as trustee unless the steering committee unanimously agreed to allow AmSouth to continue as trustee.
 "Under the ore tenus rule, a presumption of correctness accompanies the trial court's judgment when it has made findings of fact based upon oral testimony without a jury, and its judgment based on such findings will not be reversed unless it is shown to be plainly and palpably wrong, considering all of the evidence and all inferences that can be logically drawn from the evidence."
Federal Home Loan Mortgage Corp. v. Bates, 644 So.2d 925, 926-27
(Ala. 1994) (citing Clark v. Albertville Nursing Home, Inc.,545 So.2d 9 (Ala. 1989)). See also Ex parte Kent Corp.641 So.2d 242 (Ala. 1994); Griggs v. Driftwood Landing, Inc., 620 So.2d 582
(Ala. 1993); Herston v. Austin, 603 So.2d 976 (Ala. 1992). Thus, the trial court's order modifying its former order and appointing AmSouth as trustee, and *Page 452 
the findings upon which the order was based, are entitled to a presumption of correctness unless they are plainly and palpably wrong.
 Discussion
The trial court made the following pertinent findings of fact based upon the oral testimony and documentary evidence presented:
 "4. Three of the four members of the family committee, as well as 75% of the current income interests, are in agreement that the proposed family committee of trustees is impractical, unfair, and detrimental to the trust and its beneficiaries; and that it should be abandoned in favor of continuing AmSouth Bank as an impartial, sole corporate trustee under the terms hereafter set forth.
 "5. The Court finds that, among the three branches of the family, and among the members of the proposed family committee of trustees, there is an extensive history of unfriendly relations, hostility, and acrimony. All of Mr. Sam's children, and both McNeels, gave extensive testimony of difficulties in working harmoniously with Jacob Lowrey, III as a committee member. There was extensive testimony relating to correspondence and conduct by Jacob Lowrey III since the entry of the 1993 decree which other family members found hostile, offensive and inappropriate. Family members as well as trust officers of the AmSouth Bank testified that Jacob Lowrey III sometimes took actions and pressed inquiries which they did not regard as justified or in the interest of the trusts, and which were sometimes offensive or insulting. The Court finds that these inharmonious relationships have in the past and will in the future detrimentally affect the best interests of the trust and the beneficiaries thereof in a significant way, and that such a family committee is entirely unsuitable under the prevailing circumstances.
 "6. In addition to the matters relating to Jacob Lowrey, III, the Court finds that seriously inharmonious relations have existed in the recent past between Sam Lowrey, Jr. on the one hand, and his sisters Shelby Lowrey Jones and Ann[e] Lowrey McMillan on the other hand. Mrs. Jones and Mrs. McMillan strenuously object to having been excluded from the family committee. Their brother Sam, Jr. declined their requests to share his vote on the family committee or otherwise participate in the management of the trusts, which disagreement resulted in the sisters filing pleadings challenging the 1993 trust arrangements. The Court sees no reason why these current income beneficiaries who wish to participate in the management of the trusts should be so excluded. The sisters have joined in the present `Petition to Modify' which will have the effect of resolving that disagreement, and it appears that harmony among the children of Mr. Sam has been restored at the present time. However, it is clear to the Court that, absent a resolution of these sisters' understandable desire to be involved in the management of the trusts on the same basis as their brother, this issue can and probably would continue to fester and lead to further inharmonious relationships and continued litigation."
The court further found the family trust committee to be unsuitable and not in the best interest of the trusts or the beneficiaries, because of (1) the distances involved and geographic separation of the residences of the proposed family committee; (2) the significant differences in the circumstances of the various family members (including family size, age, children, financial objectives, and different present-income interests in the trusts); (3) the lack of expertise necessary for the efficient administration of such complex trusts (consisting of 20,000 acres of timberland, including oil and gas interests and nontimber real-estate-management activities); and (4) the fact that since 1981 *Page 453 
the trusts have been the subject of intrafamily litigation and the fact that the three-year period during which AmSouth served as trustee was the longest period that the litigation over the trusts was not actually ongoing or imminently threatened.
The record shows that Jacob Lowrey III is the only steering-committee member who favors having the trusts run by a family committee. His father, Buck Lowrey, testified that he wanted the trial court to do what was best for the trusts, even if it meant having a corporate trustee manage the trusts. The McNeels and the descendants of Sam Lowrey, Sr. (Sam Lowrey, Jr., Shelby Lowrey Jones, and Anne Lowrey McMillan) all oppose having a family committee as trustee. Thus, a review of the extensive record in this case and the applicable law leads this Court to conclude that the trial court did not err in modifying the 1993 consent judgment, for several reasons. First, modifying the 1993 consent judgment was within the trial court's discretion. We have held that "`[s]upervising the administration of trusts is a well-recognized ground of equity, and the regulation and enforcement of trusts is one of the original and inherent powers of the equity court.'" Ex parte Holt, 599 So.2d 12, 14 (Ala. 1992) (quoting First Alabama Bank of Montgomery, N.A. v. Martin,425 So.2d 415, 423 (Ala. 1982)). Furthermore, the 1993 consent judgment included a clause stating that the trial court retained jurisdiction "for all purposes."
Second, the wills state: "In the event that Samuel Graves Lowrey should die before the termination of this trust I direct that the trial court wherein this trust is being administered shall name a proper and suitable person to fill such vacancy." "The law is well settled in Alabama that the touchstone for construction of a will is to ascertain [the] testator's intention by giving effect to all the provisions of the will as a whole."Nevin v. Nevin, 366 So.2d 266, 268 (Ala. 1979) (citing Perdue v.Roberts, 294 Ala. 194, 314 So.2d 280 (1975)). Thus, it was the will of the testators that the trial court appoint a successor trustee.
Jacob Lowrey III argues that the family committee automatically became trustee, pursuant to the 1993 consent judgment, when three years expired and the committee did not unanimously vote to allow AmSouth to continue as trustee. He cites § 19-3-211, Ala. Code 1975, as support for his contention that once the family committee automatically became trustee it could not be removed. Section 19-3-211 allows the circuit court to remove a trustee on certain grounds, including a trustee "who, for any cause, is an unsuitable person to execute the trust." The removal of a trustee is a matter that rests in the discretion of the trial court, and the scope of review on appeal from an order removing a trustee is limited to determining whether the trial court abused its discretion. Jones v. McGuirt, 416 So.2d 970
(Ala. 1982). Even if we accepted Jacob Lowrey III's argument that the family committee automatically became trustee, we would still hold that the trial court did not abuse its discretion. All of the respondent-beneficiaries testified that they preferred a corporate trustee as opposed to a family-committee trustee, because of the strife and disharmony among family members over the trust. Buck Lowrey, the last living child of J.F.B. and Eloise Lowrey, testified that he wanted the trial judge to do whatever was best for everyone, even if it meant having a corporate trustee. Under the ore tenus rule, the trial court's findings and its judgment based on those findings must be affirmed if they are not plainly and palpably wrong. The record supports the trial court's findings that continuing the family committee as trustee would be unsuitable and not in the best interest of the trust. Therefore, the trial court's judgment is affirmed.
AFFIRMED. *Page 454 
Hooper, C.J., and Maddox, Houston, Cook, See, Lyons, Brown, and Johnstone, JJ., concur.
[1] Mr. and Mrs. Lowrey were survived by their three children, Samuel Lowrey, Sr. (now deceased), who held a 50% interest in the trust; Martha Lowrey McNeel (now deceased), who held a 25% interest; and J.F.B. Lowrey, Jr. ("Buck"), who holds a 25% interest. Sam Lowrey, Jr., Shelby Lowrey Jones and Anne Lowrey McMillan are the children of Samuel Lowrey, Sr., and each holds a 16.6% interest in the trusts. Alan and Lowrey McNeel are the sons of Martha Lowrey McNeel, and each holds a 12.5% interest in the trusts. Jacob Lowrey III, Sandra Lowrey Robinson, and Buche Lowrey Tierman are the children of Buck Lowrey and will succeed to Buck's interest upon his death.
[2] In granting the McNeels' "Petition for Modification," the court concluded that it was unnecessary to decide the issues arising from Anne McMillan and Shelby Jones's "Petition to Enforce Judgment and to Implement Substitution of Trustees."